ESSIE IRENE GAFFNEY, AS EXECUTRIX UNDER THE LAST WILL AND TESTAMENT OF JAMES E. GAFFNEY, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 83151.   Promulgated October 7, 1937.

*Pike P. Waldrop, Esq.*, for the petitioner.
*J. R. Johnston, Esq.*, for the respondent.

OPINION.

HILL: The issue for decision here is whether the decedent made a valid gift to his wife in 1922 of the shares of Commonwealth Realty Trust and in 1923 of the shares of stock in the Brooklyn Ash Removal Co., under the facts and circumstances set out in our findings of fact above.

The courts of the State of New York, where the transactions involved herein occurred, have stated the requisite elements of a gift in the following language:

In order to constitute a gift, there must be, on the part of the donor, an intent to give, and a delivery of the thing given, to or for the donee, in pursuance of such intent, and, on the part of the donee, acceptance. * * *

Delivery may be either actual, symbolical, or constructive, but must be such as to divest the donor of the possession, control, and dominion over the thing given. *In re Babcock's Estate*, 147 N. Y. S. 168, affirmed 153 N. Y. S. 1105.

The Board has repeatedly recognized substantially the same elements as essential to the making of a valid gift *inter vivos*. See *Adolph Weil*, 31 B. T. A. 899; *Theodore C. Jackson et al., Administrators*, 32 B. T. A. 470, and decisions cited.

While respondent concedes that the decedent formally transferred to his wife title to the shares of stock in controversy, he contends that there was a lack of donative intent on the part of decedent; that petitioner has not shown a clear and unmistakable intention on the part of the decedent absolutely and irrevocably to divest himself of title, dominion, and control of the subject matter of the gift *in praesenti*, nor the irrevocable transfer of the present legal title and of the dominion and control of the entire gifts to petitioner, so that decedent could exercise no further act of dominion or control over

them. Respondent argues that the facts show that decedent never intended to make a gift of the securities to his wife, but merely effected a formal transfer of title to remove his assets from the reach of creditors, retaining for himself all beneficial interest and dominion and control.

In support of his contention, respondent points to the following facts: (1) The stock certificates were kept in the decedent's safe deposit box at the bank, to which Essie I. Gaffney did not have the right of access from the dates of the transfers in 1922 and 1923 until April 7, 1931; (2) in 1925 petitioner endorsed the certificates in blank and put them up as collateral with the Manufacturers Trust Co. for personal loans to the decedent, where the certificates remained until the decedent's death; (3) after the transfers, decedent continued to participate in the direction of both the Commonwealth Realty Trust and the Brooklyn Ash Removal Co.; (4) from December 1930 to the date of his death, decedent held a power of attorney to draw checks on petitioner's bank account; and (5) a large portion of the income from the transferred assets was consumed in the payment of household expenses, and in loans to the decedent and to a corporation which he owned.

The matters referred to by respondent, we think, are of little importance in deciding the issue presented in this case, except only as they may bear upon the question of donative intent.

A gift is none the less valid and complete because the donee does not retain possession of the property after delivery. "The donor may retain possession if he does so as agent of the donee for safekeeping." *Brady's Estate*, 239 N. Y. S. 5. "After a gift is once complete and the title has passed to the donee, the fact that the donor subsequently has possession of the property given does not affect the validity of the gift." *Edson v. Lucas*, 40 Fed. (2d) 398.

Transfer of stock on the books of the corporation in itself constitutes a delivery, in the absence of evidence establishing lack of donative intent. *Marshall v. Commissioner*, 57 Fed. (2d) 633, citing *Robert's Appeal*, 85 Pa. 84. It is only where it is affirmatively shown that the donor did not intend thereby to make a gift that transfer of stock on the books of the corporation is held to be insufficient. *Theodore C. Jackson et al., Administrators, supra; McCann v. Commissioner*, 87 Fed. (2d) 275. Cf. *Oscar G. Joseph*, 32 B. T. A. 1192.

If a valid gift *inter vivos* has been made, it is of no importance what the donee thereafter does with the income from the property. In the case of a bona fide gift by a husband to his wife, the wife may thereafter dispose of the income as she chooses. She may lend it to her husband, or may indeed make a gift of it to him, without invalidating the gift to her of the *res*. To recognize any

less right in the donee would be to restrict her ownership of the property. In *Marshall* v. *Commissioner, supra,* in referring to stock transferred by the petitioner to his wife on the books of the corporation, the court said:

What she did with those [dividend] checks after receipt is a matter of complete indifference. The stock was not endorsed and redelivered to her husband, and could not thereafter be transferred, or the dominion and ownership of the petitioner be regained, except through the independent and voluntary act of his wife.

If the wife returns the income from the property to the husband as a gift, or as an alleged loan not thereafter repaid, such act might properly raise a question whether the husband in the first place had the requisite intention to make a bona fide gift of the property to his wife, and such question then must be resolved in the light of the facts of each particular case. "It is true that where property is transferred by a husband to his wife without consideration, there is a presumption that it is a gift, but it is also true that such presumption is one of fact and may be rebutted by a showing of the real intention of the parties. *Smithsonian Institution* v. *Meech,* 169 U. S. 398." *McCann* v. *Commissioner, supra.*

What then were the real intentions of the parties in the instant case as disclosed by the record? The uncontroverted evidence shows (1) that prior to the transfers, decedent told his wife that he was "going to give" the securities in question to her; (2) that at the time of the transfers there was no understanding or agreement between decedent and his wife that he should retain any right or interest of any kind in the transferred property, and decedent never thereafter in fact claimed any such right or interest; (3) that the shares were formally transferred on the books of the trust and of the corporation from decedent to his wife, and thereafter all dividend checks, with the single exception, were either made payable to the wife and delivered to her, or were deposited to the credit of her personal bank account; (4) that after the transfers decedent repeatedly made statements to third parties that he had given the securities to his wife; (5) that in 1921 prior to the transfers decedent had made a will containing a testamentary disposition of the securities in question, and after the transfers decedent and his wife executed new wills contemporaneously by which the wife exercised such power of appointment and no mention was made thereof by decedent in his will; (6) that after the transfers decedent and his wife prepared statements of their respective assets and liabilities which they submitted to a bank for the purpose of obtaining loans, and in such statements the securities involved were consistently listed over a number of years as being the property of decedent's

wife; and (7) that the private books of account of decedent, containing a statement of his assets, made no reference to the securities in controversy.

In our opinion, the actions of the parties, when viewed in their entirety, before, at the time, and subsequent to the transfers assailed by respondent, extending over a period of approximately 10 years prior to decedent's death, fairly establish that the decedent intended to and did make a bona fide gift of the securities to his wife. And we think the matters urged by respondent do not compel a contrary conclusion.

In support of his position, respondent cites our decisions in *Theodore C. Jackson et al., Administrators, supra; Oscar G. Joseph, supra,* and the decision of the United States Circuit Court of Appeals for the Sixth Circuit in *McCann v. Commissioner, supra.* All of these cases, we think, are clearly distinguishable on the facts. The circumstances of each case indicate that the transferor therein had no intention of making a bona gift *inter vivos.*

In the *McCann* case, the husband incorporated his business and issued the majority of the stock of the corporation to his wife, who paid nothing for the stock. Another corporation was later organized, and its stock was issued to the stockholders of the first corporation, the wife receiving her share. None of the stock certificates was ever delivered to the wife. They were placed in the office of the corporation under the control of her husband. The dividends on the stocks standing in the wife's name, when declared, were credited to her account on the books of the company and then transferred to her husband's account. Later, the husband sold the stock of the corporation without consulting his wife, and the purchaser issued a check for more than $1,000,000 in part payment of the stock held in her name. The check was delivered to the husband, and by his direction it was endorsed by his wife and redelivered to him. He deposited it in the bank to his own credit and invested the proceeds in Government bonds which he held at the time of his wife's death. The court in its opinion said:

> The facts found by the Board clearly rebut the presumption of a gift of the stock to the decedent. They show that it was contemplated by the parties that the stock should be held by the wife for the husband, and that both thereafter regarded it, with the dividends thereon and proceeds from its sale, as his property and as not belonging to her.

The facts of the other cases cited by respondent as readily distinguished themselves from the present proceeding as those in the *McCann* case.

Respondent urges a further point which requires brief discussion. He argues in substance that when Essie I. Gaffney endorsed the stock

certificates in blank in 1925 and put them up as collateral security for loans to the decedent, she thereby restored the property to decedent, and since the certificates so remained with the bank until decedent's death, they constituted a part of his gross estate. In support of this contention respondent cites *McCann* v. *Commissioner*, *supra*.

The analogy, we think, does not hold. In the cited case, the wife endorsed the check given in payment for the stock and delivered the check to her husband, who appropriated the proceeds to his own use. The wife thus divested herself of all incidence of ownership, and restored the property, or proceeds of sale, to her husband prior to her death. The property, therefore, constituted no part of her gross estate when she died. Here there is no evidence that the wife intended to or did restore to her husband the ownership of the securities formerly given to her by him. She merely loaned the stock certificates to him for the specific purpose of using them as collateral security for loans. It is of no significance that the husband happened to die before the loans were repaid and the certificates returned to the wife. Decedent was under the legal obligation to return them to his wife upon demand, or in accordance with the agreement under which they were loaned, or to account to her for their value. Clearly they were not his property, nor were they intended to be or so treated.

Respondent urges the alternative contention that if the transfers under consideration constituted gifts, they were intended to take effect in possession or enjoyment at or after decedent's death, and therefore should be included in his gross estate. The conclusions reached by us above obviously are a sufficient answer to this contention. Since the transfers were valid and completed gifts *inter vivos*, they took effect in enjoyment as well as possession at the respective dates of the transfers. It is not contended that the transfers were made in contemplation of death, nor do the facts so indicate.

On the issue presented, respondent's action is reversed.

The conclusions reached render it unnecessary to hold a further hearing for the introduction of evidence respecting the value of the securities mentioned. Also, we assume that the third issue respecting deductions is now eliminated, since petitioner assigned error in that connection only if it should be held that respondent did not err in including the value of the securities in decedent's gross estate.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*